IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:04cr095(1) |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| MEGED D. YISRAEL, | : | |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEAS (DOC. #120); CONFERENCE CALL SET IN CAPTIONED MATTER AND IN CASE NO. 3:O4cr095(2), UNITED STATES v. MIGDAWLAW YISRAEL

---

Defendant Meged Yisrael ("Defendant" or "Yisrael") was charged in the Indictment (Doc. #1) with sixteen separate offenses, to wit: one count of conspiring to possess with intent to distribute and to distribute at least 1000 kilograms of marijuana, five kilograms of cocaine and five grams of crack cocaine, in violation of 21 U.S.C. § 846 (Count 1); five counts of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3) (Counts 2, 3, 4, 12 and 15); five counts of possessing or carrying firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts 5, 6, 13, 14 and 16); two counts of possessing with intent to distribute and distributing a controlled substance, in violation of 21 U.S.C. § 841(a) (Counts 7

and 11); one count of possessing a rifle with a barrel less than 16 inches in length which had not been registered, in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count 8); one count of possessing a silencer which had not been registered, in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count 9); and one count of possessing a silencer which had not been registered, in violation of 26 U.S.C. §§ 5861(i) and 5871 (Count 10).

On July 19, 2006, the Defendant entered pleas of guilty to Counts 1 and 5 of the Indictment (Doc. #1). In accordance with the Plea Agreement which he had executed, the Government agreed to dismiss the other counts in the Indictment, if the guilty pleas were accepted and not withdrawn.[1] See Doc. #89 at 2. Subsequently, Yisrael retained new counsel (see Doc. #108) and, on November 27, 2006, moved to withdraw his guilty pleas. See Doc. #120. On February 16, 2007, this Court conducted an oral and evidentiary hearing on that motion, and the parties have filed their post-hearing memoranda. See Docs. ##136 and 142. The Court now rules upon the Defendant's Motion to Withdraw Guilty Pleas (Doc. #120).

In that motion, the Defendant argues that the Court must permit him to withdraw his guilty pleas for a number of reasons, to wit: that his former counsel did not afford him the opportunity of reviewing the 212 pages of discovery produced by the Government; that he did not understand the plea agreement; that his former counsel did not file motions to suppress the evidence seized upon the execution of search warrants and did not show him (Yisrael) the affidavits

---

[1]In addition, it was agreed in the Plea Agreement that Count 1 of the Indictment would be amended to delete references to crack cocaine set forth therein. The Indictment was so amended. See Doc. #94.

executed to obtain those warrants; and that he did not have a conversation with former counsel concerning the sentencing guidelines and did not understand the ramifications of mandatory minimum sentencing in drug conspiracy cases. See Doc. #120. In his post-hearing memorandum, Yisrael argues that his guilty pleas must be vacated, because those pleas were not knowingly, voluntarily and intelligently entered, given that: 1) he had not reviewed either the discovery or the affidavits with which search warrants were obtained; 2) he did not have the opportunity to review the Plea Agreement (Doc. #89) and attached Statement of Facts until the day that he entered his guilty pleas; and 3) he did not fully understand that the "5k" provisions in the Plea Agreement would apply only to Count 5, meaning that he would be subject to a minimum mandatory sentence of 10 years, regardless of what type of assistance he provided to the Government. See Doc. #136 at 2-3 (unnumbered).[2] As a means of analysis, the Court will set forth the factual context leading up to and surrounding the Defendant's entry of guilty pleas.[3]

In May, 2002, Special Agent Randall Terry ("Terry") of the Drug Enforcement Administration and other law enforcement officials executed search warrants at a number of locations in which the Defendant had an interest. During

---

[2]The Court deems any basis for withdrawing his guilty pleas which Defendant set forth in his motion, while not discussed in his post-hearing memorandum, to have been waived.

[3]The Court bases the following recitation of the factual context upon the testimony of the Defendant and Special Agent Randall Terry at the February 16th, oral and evidentiary hearing; transcripts of the Court's conferences with counsel on March 22, 2006 (Doc. #125) and April 26, 2006 (Doc. #124); a transcript of the Defendant's change of plea hearing held on July 19, 2006 (see Doc. #129); and the Plea Agreement (Doc. #89).

the execution of one of those search warrants, Terry and Yisrael came into contact. Terry described the Defendant as being very cooperative at the location where they had initially met and indicated that Yisrael agreed to accompany him back to his (Terry's) office. Terry interviewed Yisrael over the next few days. During that period of time, the Defendant also made consensual telephone calls to some of the people who supplied marijuana to him. After a few weeks, Yisrael ceased being cooperative. Rather than calling Terry to provide information or other cooperation, Yisrael had become combative, asking Terry why he was not out arresting other drug dealers and why he (Terry) was picking on him (Defendant). As a consequence, the Defendant's cooperation and interactions with Terry ceased for a time.

At some point in the latter half of 2002, or early 2003, Terry began to investigate the Defendant anew. An additional search warrant was served at his residence in March, 2003, and he was eventually indicted. If convicted of all offenses charged in the Indictment (Doc. #1), Defendant would have been sentenced to a minimum of 115 years.[4]

Since Yisrael was not cooperating with Terry or other law enforcement officials when the Indictment was returned, no effort was made to secure his cooperation in exchange for the offer of a reduced sentence. That changed, however, as a result of a conversation between Terry; Government's counsel, Anne Fehrman ("Fehrman"); and Defendant's former counsel, Daniel O'Brien

---

[4]That is the sum of the mandatory minimum sentences provided for by a number of the offenses charged in the Indictment. In addition, those offenses did not give this Court the discretion to order that the sentences be served concurrently. Rather, the statutes required that the Court impose consecutive sentences.

("O'Brien"), concerning possible plea negotiations. During that conversation. O'Brien inquired as to whether Yisrael could cooperate and reduce the amount of mandatory minimum and consecutive sentences he was facing. Ultimately, Terry informed both Yisrael and O'Brien that, in exchange for the Defendant's cooperation, the Government would be willing to permit him to plead guilty to an unspecified number of charges, in order to afford him the opportunity of reducing his minimum sentence. Terry also indicated that the number of charges to which he would be required to plead guilty was dependent upon his level of cooperation and the quality of same. In addition, Terry told the Defendant and his counsel that Yisrael would be required to plead guilty to a sufficient number of offenses to guarantee that he would be subject to a minimum mandatory sentence of 15 years.

As a result, Terry and Yisrael met and spoke on the telephone a number of times. The information provided by the Defendant, as part of his cooperation, was of a sufficient quality and quantity that Fehrman and Terry decided to permit him to plead guilty to Counts 1 and 5, alone, thus reducing his exposure in terms of a minimum mandatory sentence to 15 years, 10 years on Count 1 and 5 years on Count 5. O'Brien was provided a plea agreement which reflected such guilty pleas, and a change of plea hearing was scheduled for March 22, 2006. However, that hearing did not occur on that date, because Yisrael and his counsel remembered the discussions with the Government differently. During a conference which the Court conducted with counsel on March 22nd, O'Brien indicated that he remembered the Government as having indicated that sufficient cooperation by Yisrael would result in guilty pleas with the promise of a motion that would result in a sentence with no mandatory minimum component. The Court suggested that

O'Brien, Fehrman and Terry meet with J. Richard Chema, who was the head criminal prosecutor for the United States Attorney for the Southern District of Ohio, in order to brainstorm about a solution to the impasse.

After those four had met, the Court and counsel spoke again, on April 26, 2006, concerning a possible agreed resolution to this prosecution through a plea bargain.  During that conference, O'Brien stated that he now understood that the Government would not be willing to permit his client to plead guilty to crimes with less than a mandatory minimum of 15 years and that the Government had indicated that it would be possible to reduce that minimum, 15-year sentence with additional cooperation and the Government's filing of a motion under Rule 35 of the Federal Rules of Criminal Procedure, but that 10 years was the floor for such a reduction.  In other words, any motion filed by the Government would apply only to Count 5 and its 5-year minimum mandatory sentence.  O'Brien also indicated that he would have to discuss the matter with his client.

On July 19, 2006, the Court conducted a change of plea hearing with the Defendant.  As part of that process, Yisrael executed a Plea Agreement (Doc. #89).  Therein, the Defendant agreed to plead guilty to Counts 1 and 5 of the Indictment (Doc. #1).[5]  See Doc. #89 at 1-2.  He also acknowledged that he understood that Count 1 carried a mandatory minimum 10-year sentence, that Count 5 carried a mandatory 5-year sentence and that the sentence for Count 5 would have to be served consecutively to that imposed for Count 1.  Id. at 3.  In addition, the Plea Agreement expressly described the Defendant's ability to obtain

---

[5]As is indicated above, Count 1 was amended to delete references to crack cocaine therefrom.  See Doc. #89 at 1.

- 6 -

a sentence below the mandatory 5-year sentence for Count 5. Id. at 7. In particular, the Government indicated that, if Defendant were to provide truthful testimony which, in its sole discretion was deemed to be substantial, it would move for a downward departure in his sentence in accordance with Rule 35 and 18 U.S.C. § 3553(e). Id.

During the change of plea hearing, the Court initially stated that it understood that the Defendant was going to plead guilty to Counts 1 and 5, with the remainder of the Counts being dismissed, and that those two offenses carried, respectively, mandatory minimum sentences of 10 and 5 years which would have to be served consecutively. Transcript of July 19, 2006, Change of Plea Hearing (Doc. #129) at 3-4. The Court also stated that Yisrael could obtain a reduction of only the 5-year, mandatory minimum sentence for Count 5, if the Government were to exercise its discretion and file a motion under Rule 35 and the Court were to concur with that request. Id. at 4. After counsel for the Defendant and for the Government indicated that they shared the Court's understanding (id.), Yisrael indicated that it was his desire to enter guilty pleas to those two charges. Id. at 4-6. The Defendant also stated that he desired to enter guilty pleas, because he was guilty as charged in those two Counts. Id. at 6.

After the Court had sworn the Defendant (id.), it read what purported to be the agreed statement of facts. Id. at 8-13. When asked if he agreed with that statement of facts, Yisrael said that he agreed with most of it, but that a portion of that recitation of facts was not correct. Id. at 13. As a consequence, a recess was taken, so that Defendant and his counsel could meet with Government's counsel in order to come to agreement on a statement of facts. When Court

reconvened, the Court read the Defendant a modified version of the statement of facts, to which he agreed. Id. at 16-20.

The Court then discussed the sentencing range under the advisory Sentencing Guidelines with Defendant and his counsel. Counsel indicated that the advisory range for Count 1 was 11 years and 3 months to 14 years and that the guidelines did not apply to Count 5, since the mandatory minimum sentence of 5 years was applicable. Id. at 21-25. The Court then explained sentencing to the Defendant, stressing that his sentence for Count 1 would be from 10 years to life incarceration. Id. at 28. The Defendant indicated that he understood. Id. When the Court reiterated that, in accordance with the Plea Agreement, there was no way that it could sentence him to less than 10 years for Count 1, the Defendant indicated that he understood and that no one had told him that he could receive a lesser sentence on that Count. Id. at 29. In addition, the Court informed the Defendant that the Sentencing Guidelines did not strictly apply to Count 5, since a mandatory minimum sentence of 5 years was applicable to that offense and that the sentence for that offense must be served consecutively with that imposed for Count 1. The Defendant indicated that he understood. Id. Moreover, the Defendant acknowledged an understanding that the cooperation he had previously given was reflected in the Plea Agreement. Id. at 31-32. Yisrael also indicated that his counsel had discussed these matters with him and that he (Defendant) did not have any questions. Id. at 49-50. After Fehrman had read the Plea Agreement (Doc. #89) into the record, the Defendant, in response to inquiries from the Court, indicated that the reading of the Plea Agreement corresponded with his understanding of that document, that he had gone over that document with his

counsel and had read it himself, that he felt he understood it, that he had no questions concerning the Plea Agreement and that he had signed and accepted it. Id. at 62-63. The Defendant also acknowledged that, with respect to Count 1, no one had told him there was any way that he could possibly get a sentence of less than 10 years and that, with regard to Count 5, no one had told him there was any way that he could possibly get a sentence of less than 5 years, except as a result of cooperating by testifying against someone else and the Government requesting leniency for him. Id. at 63-64. Yisrael stated that he was pleading guilty voluntarily, because he was guilty. Id. at 64-65.

Having reviewed the factual circumstances leading to and surrounding the Defendant's entry of guilty pleas to Counts 1 and 5, the Court will briefly review the legal principles which it must apply in order to determine whether to permit the Defendant to withdraw those pleas. It will then apply those legal standards to the facts.

As the Defendant argues, a guilty plea that is not voluntarily and intelligently entered is void and must be vacated. Boykin v. Alabama, 395 U.S. 238, 243 n. 5 (1969) (noting that, "if a defendant's guilty plea is not … voluntary and knowing, it has been obtained in violation of due process and is therefore void") (internal quotation marks and citation omitted). In Bousley v. United States, 523 U.S. 614 (1998), the Supreme Court reiterated that a "plea of guilty is constitutionally valid only to the extent that it is 'voluntary' and 'intelligent.'" Id. at 618 (citing Brady v. United States, 397 U.S. 742 (1970)). In discussing whether a guilty plea has been

voluntarily and intelligently entered, the Bousley Court examined its holding in Brady:

> For example, Brady, who pleaded guilty to kidnaping, maintained that his plea was neither voluntary nor intelligent because it was induced by a death penalty provision later held unconstitutional. 397 U.S., at 744. We rejected Brady's voluntariness argument, explaining that a "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense "unless induced by threats …, misrepresentation …, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Id., at 755 (internal quotation marks omitted). We further held that Brady's plea was intelligent because, although later judicial decisions indicated that at the time of his plea he "did not correctly assess every relevant factor entering into his decision," id., at 757, he was advised by competent counsel, was in control of his mental faculties, and "was made aware of the nature of the charge against him," id., at 756.

Id. at 619.

In addition, Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a District Court may permit a defendant to withdraw his guilty plea, before sentence has been imposed, if he "shows any fair and just reason."[6] This Rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone." United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir. 1991), cert. denied, 502 U.S. 1117 (1992). It is not designed "to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." Id. (internal quotation marks and citation omitted). In United States v. Spencer, 836

---

[6]Since this portion of Rule 11(d) was previously set forth as Rule 32(e) of the Federal Rules of Criminal Procedure, some of the decisions from the Sixth Circuit, cited by this Court herein, refer to Rule 32. The recodification of Rule 32(e) in Rule 11, however, has not resulted in any substantive change to that provision of the Federal Rules of Criminal Procedure. See United States v. Cinnamon, 2004 WL 2318104 (6th Cir. 2004).

F.2d 236 (6th Cir. 1987), the Sixth Circuit announced a five-factor test to be applied when a defendant moves to withdraw his plea before he has been sentenced. The Sixth Circuit subsequently added a sixth factor to the calculus. In United States v. Durham, 178 F.3d 796 (6th Cir.), cert. denied, 528 U.S. 1033 (1999), the Sixth Circuit reviewed the applicable factors:

> This Court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Bashara, 27 F.3d 1174, 1180 (6th Cir. 1994). Durham moved to withdraw his plea of guilty to the escape, alleging that the government had coerced him into pleading guilty. The district court denied the motion in light of this Court's decision in United States v. Spencer, 836 F.2d at 239-40, finding that Durham had not shown a "fair and just reason" for withdrawal.
> Federal Rule of Criminal Procedure 32(e) provides that a court may permit a defendant to withdraw a plea prior to sentencing if he shows any "fair and just reason" for the withdrawal. Fed. R. Crim. P. 32(e). In Spencer, 836 F.2d at 239-40, this Court promulgated five factors for a court to consider in determining whether to grant a motion to withdraw: (1) the length of time between the guilty plea and the filing of the motion to withdraw, (2) the defendant's reason for not presenting the grounds earlier, (3) whether the defendant has asserted or maintained his innocence, (4) the circumstances surrounding the plea, the nature and background of the defendant, and whether the defendant has admitted guilt, and (5) any potential prejudice to the government, although a showing of prejudice is not necessary. In United States v. Pluta, 144 F.3d 968, 973 (6th Cir. 1998), this Court added the defendant's prior experience with the criminal justice system as a sixth factor.

Id. at 798-99. Accord, United States v. Valdez, 362 F.3d 903, 912 (6th Cir. 2004). See also, United States v. Dixon, 479 F.3d 431, 436 (6th Cir. 2007) (listing the defendant's nature and background as an additional factor, rather than as part of another factor); United States v. Mader, 251 F.3d 1099, 1105 (6th Cir. 2001) (same); United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir. 1994) (same). The defendant has the burden of proving that the withdrawal of his plea is justified. United States v. Baez, 87 F.3d 805, 807 (6th Cir.), cert. denied, 519

- 11 -

U.S. 973 (1996); United States v. Stephens, 906 F.2d 251, 252 (6th Cir. 1990). Whether to permit a defendant to withdraw his guilty plea is committed to the discretion of the District Court. United States v. Lineback, 330 F.3d 441, 443 (6th Cir. 2003).

Herein, for reasons which follow, this Court concludes that Yisrael made a tactical decision to enter guilty pleas, waited several months, and then moved to withdraw those pleas, because he believed he had made a bad choice in pleading guilty. Alexander, 948 F.2d at 1004. As a means of analysis, the Court will initially set forth its reasons for rejecting Yisrael's assertion that his guilty pleas must be vacated, because those pleas were not knowingly and intelligently entered, following which it will explain why applying the multi-factor test developed by the Sixth Circuit leads to the conclusion that withdrawal of Defendant's guilty pleas is not warranted.

As is indicated above, Yisrael contends in his post-hearing memorandum that his guilty pleas were not voluntarily and intelligently entered, given that: 1) he had not reviewed either the discovery or the affidavits with which search warrants were obtained before July 19, 2006; 2) he did not have the opportunity to review the Plea Agreement (Doc. #89) and attached Statement of Facts until the day that he entered his guilty pleas; and 3) he did not fully understand that the "5k" provisions in the Plea Agreement would apply only to Count 5, meaning that he would be subject to a minimum mandatory sentence of 10 years regardless of what type of assistance he provided to the Government.

The Court need not expend a great deal of time on the Defendants' first two points. Although the Defendant testified that O'Brien did not share the discovery

or affidavits used to secure the search warrants with him (Defendant), he failed to point to any document in the discovery, with which he could have defended himself from the 16 Counts charged against him in the Indictment (Doc. #1). In other words, he has not indicated what he would have done differently if O'Brien had shared the discovery with him. With respect to the affidavits, he has not explained how his course of conduct would have been different if O'Brien had shown them to him or that he would have obtained the suppression of some or all of the evidence seized, if O'Brien had shared them with him.[7] In addition, the Court accepts, for present purposes, that the Defendant did not have the opportunity to review the Plea Agreement and Statement of Facts until July 19, 2006, the day upon which he entered his guilty pleas. However, he testified under oath that day that he had read and understood the Plea Agreement, that he had gone over it with his counsel, that he had no questions about it and that he had signed it and had no questions about that Agreement.[8] Moreover, the Defendant demonstrated that he had the ability to challenge matters with which he did not agree, during the change of plea hearing. When he had a disagreement with the original statement of facts, Yisrael brought that fact to the attention of the Court, which necessitated a recess in order to allow that statement to be modified by the Defendant, O'Brien and Fehrman. Notably, Yisrael raised no such objection or question with respect to the Plea Agreement.

---

[7]It bears emphasis that the Defendant has not requested that he be permitted to withdraw his guilty pleas because O'Brien failed to provide adequate representation by neglecting to file a motion to suppress evidence.

[8]His counsel confirmed that he and his client had discussed the Plea Agreement and that he believed that Yisrael understood it.

In addition, this Court cannot find, as a matter of fact, that Yisrael lacked an understanding that the "5k" provisions in the Plea Agreement would apply only to Count 5, meaning that he would be subject to a minimum mandatory sentence of 10 years under Count 1, regardless of what type of assistance he provided to the Government. While there may have been confusion about the guilty pleas on March 22, 2006, when the Defendant was initially scheduled to enter such pleas, that confusion had been extinguished by the time that the Court spoke with counsel on April 26, 2006, nearly three months before the change of plea hearing. In addition, as is reviewed above, the Defendant repeatedly stated under oath, during the change of plea hearing, that he understood that no one had promised him that there was any way he could obtain a sentence of less than 10 years for Count 1. It bears emphasis that the Defendant has a college education. In addition, he testified that he had read the Plea Agreement and discussed it with his counsel. That document clearly set forth the fact that the Defendant was not going to receive a sentence of less than 10 years for Court 1.[9]

Accordingly, the Court concludes that the Defendant, who was represented by competent counsel both before and during the change of plea hearing, voluntarily and intelligently entered his guilty pleas. Consequently, the Court

---

[9]Yisrael testified during the hearing conducted on his request to withdraw his guilty pleas that his counsel had indicated that there is always a way to obtain a reduction in a sentence, explaining that the Defendant could get the 10-year mandatory minimum sentence for Count 1 reduced, if he were to observe a murder in prison and testify about it for the prosecution. The Court cannot accept his testimony in that regard, since it is in contravention of his sworn testimony during the change of plea hearing to the effect that no one had told him that he could be sentenced to less than 10 years. Were it relevant to the issue at hand, one would be tempted to ponder during which testimony the Defendant had committed perjury.

rejects Yisrael's contention that he is entitled to withdraw his guilty pleas, because they were not so entered.

The Sixth Circuit has adopted a six-factor test to determine whether to permit a defendant to withdraw his guilty plea, to wit: 1) the length of time between the guilty plea and the filing of the motion to withdraw; 2) the defendant's reason for not presenting the grounds earlier; 3) whether the defendant has asserted or maintained his innocence; 4) the circumstances surrounding the plea, the nature and background of the defendant, and whether the defendant has admitted guilt; 5) any potential prejudice to the government, although a showing of prejudice is not necessary; and 6) the defendant's prior experience with the criminal justice system. Durham, 178 F.3d at 798. An application of those factors likewise causes this Court to deny the Defendant's request to withdraw his guilty pleas.

First, Yisrael waited more than four months to seek to withdraw his guilty pleas. The Sixth Circuit has repeatedly held shorter delays to be sufficient to warrant the denial of a request to withdraw a guilty plea. For instance, in Valdez, the Sixth Circuit held that a 75-day delay, alone, justified the decision of the District Court to deny the defendant's request to withdraw his guilty plea. 362 F.3d at 912-13. See also, Durham, 178 F.3d at 798 (terming seventy-seven day delay the strongest factor supporting the district court's denial of the defendant's motion to withdraw his plea); United States v. Baez, 87 F.3d 805, 807 (6th Cir. 1996) (calling a sixty-seven-day delay the strongest factor supporting its denial of the motion to withdraw); United States v. Goldberg, 862 F.2d 101, 104 (6th Cir. 1988) (terming a fifty-five-day gap a "lengthy delay"); Spencer, 836 F.2d at 239

(concluding that defendant who waited five weeks to seek to withdraw his guilty plea did not act promptly). Accordingly, this factor most decidedly does not favor the Defendant's request to withdraw his guilty pleas.

Second, Yisrael has not explained why it took him more than four months to move to withdraw his guilty pleas. Therefore, this factor does not support the Defendant's request to withdraw those pleas.

Third, Yisrael has not maintained his innocence. He admitted under oath during the change of plea hearing that he was pleading guilty because he was guilty. Moreover, Defendant did not testify during the hearing on his motion to withdraw that he was innocent of the charges to which he had previously entered guilty pleas. Consequently, this factor does not support the Defendant's request to withdraw his guilty pleas.

Fourth, on March 22, 2006, the Defendant and his counsel were confused about the nature of the plea bargain being offered by the Government. That confusion, however, had been cleared up by the time that the Court spoke with counsel on April 26, 2006. During the change of plea hearing, the Defendant and his counsel both stated that Defendant understood the terms of the Plea Agreement. In addition, the Defendant has a college education, has run businesses and has admitted his guilt during the change of plea hearing, without subsequently asserting his innocence. Therefore, the circumstances surrounding the guilty pleas, the nature and background of the Defendant, and whether he has admitted guilt do not support the withdrawal of those pleas.

Fifth, the Government did not present evidence that it would suffer prejudice, if the Defendant were permitted to withdraw his guilty pleas. Of course,

the Government is not required to establish prejudice. Spencer, 836 F.2d at 240. Therefore, this factor is neutral.

Sixth, although Yisrael had not previously been charged with an offense in the federal judicial system, he has faced felony charges is state court, on which he has proceeded to trial. Given the Defendant's experience with the criminal justice system, this factor does not support the Defendant's request to withdraw his guilty pleas.

Accordingly, although one factor is neutral, none of the others favor Yisrael's request to withdraw his guilty pleas. Therefore, an application of the Sixth Circuit's six-factor test does not support that request.

Based upon the foregoing, the Court overrules the Defendant's Motion to Withdraw Guilty Pleas (Doc. #120).

The Court schedules a telephone conference call in this prosecution on Wednesday, September 5, 2007, at 1:30 p.m., for the purpose of selecting a date for sentencing in both the captioned cause and in that of a Co-Defendant, Migdawlaw Yisrael. Counsel Ben Swift should participate in this conference call.

August 29, 2007

                                                /s/ Walter Herbert Rice
                                                WALTER HERBERT RICE, JUDGE
                                                UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.
Counsel of Record in Case No. 3:04cr095(2), United States of America v. Migdawlaw Yisrael.